UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*****************************************************************************

WESLEY BROOKS,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

JUDGE MONTGOMERY

CIVIL NO: 00-68(1) (ADM/AJB)

**MOTION TO RECONSIDER AND MEMORANDUM IN SUPPORT**

*****************************************************************************

F. Clayton Tyler, Esq., Minneapolis, MN, on behalf of Petitioner Wesley Eugene Brooks.

Michael W. Ward, Assistant United States Attorney, Minneapolis, MN, on behalf of Respondent United States of America.

*****************************************************************************

Petitioner, Wesley Brooks, by and through counsel respectfully requests this Court to reconsider its order of August 18, 2004, which (1) adopted in its entirety Judge Mayerson's Report and Recommendation; (2) denied Petitioner's Objections; and (3) denied Petitioner's Petition for Writ of Habeas Corpus. More specifically, Petitioner respectfully requests this Court to reconsider its decision denying Petitioner's argument that the statute of limitations, under 28 U.S.C. §2255, as applied to this case, should be equitably tolled. In addition, Petitioner respectfully requests this Court to reconsider its position on Petitioner's Ineffective Assistance of Counsel argument because Petitioner's Fifth and Fourth Amendment rights were violated.

Wherefore, Petitioner, Wesley Brooks, by and through counsel respectfully requests this Court to reconsider its order of August 18, 2004.

Respectfully Submitted,

s/ F. Clayton Tyler_____________
F. Clayton Tyler

## MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

## BACKGROUND

In 2000, Petitioner pled guilty in the District of Minnesota to a federal criminal charge of being a felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). *United States v. Brooks*, Crim. No. 00-68 (1) (ADM/AJB). He received a 78-month prison sentence, to be served concurrently with a previously imposed state prison sentence. Petitioner is presently serving his concurrent state and federal sentences at the Minnesota Correctional Facility in Rush City, Minnesota. Petitioner currently has approximately 18 months left on his Federal Court sentence.

Petitioner did not file a direct appeal following his federal conviction and sentence because he waived his right to file a collateral attack and an appeal in his plea agreement. (See Attached Plea Agreement and Sentencing Stipulations, pg. 7, Exhibit A). However, after learning that he received ineffective assistance of counsel, Petitioner filed a §2241 habeas corpus petition. Petitioner was deprived of his constitutional right to effective assistance of counsel during his federal criminal prosecution, because his attorney (1) failed to request discovery before recommending a guilty plea, (2) failed to thoroughly investigate the case, including failing to investigate, research and litigate a *Miranda* issue and a search and seizure issue. (See Attached Petition for Writ of Habeas Corpus, Exhibit B).

The Court denied Petitioner's §2241 habeas corpus petition on July 14, 2004, in its Report and Recommendation on statute of limitations grounds. (See Attached Report and Recommendation, Exhibit C). In response, Petitioner filed pursuant to D.Minn. LR 72.1(c)(2), an Objection to the Report and Recommendation, which was also denied by the Court on August 18, 2004. In response, Petitioner has filed this Motion to Reconsider.

## LAW AND ARGUMENT

**A. Standard of Review for a Motion to Reconsider**

The Federal Rules of Civil Procedure do not recognize, or otherwise provide for a "Motion to Reconsider." *Grozdanich v. Leisure Hills Health Center*, 48 F. Supp. 2d 885 (D. Minnesota 1999), citing *Reynolds v. Condon*, 908 F. Supp. 1494, 1524 (N.D. Iowa 1995). In the present matter, Petitioner respectfully requests the Court to reconsider their dismissal of Petitioner's Habeas Corpus Petition because Petitioner received ineffective assistance of counsel throughout his plea and sentencing hearing and Petitioner diligently sought help from outside counsel and upon learning that he received ineffective assistance of counsel, Petitioner filed his Habeas Corpus Petition.

**B. Applicability of 28 U.S.C. §2241 or §2255.**

Petitioner waived his right to file a collateral attack and an appeal in his plea agreement. However, these waivers are not absolute, and may be set aside in cases where assistance of counsel was so ineffective as to undermine the knowing and voluntary nature of the waiver. *Mickelson v. United States*, (September 10, 2002) Case No. CIV. 01-1750 JRTSRN, 2002 WL 31045849 (D. Minn.), citing *DeRoo v. United States*, 223 F.3d 919, 923-924 (8th Cir. 2000) (See *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995) (holding that dismissal of an appeal based on a waiver is inappropriate if the waiver itself was 'tainted by ineffective assistance of counsel.'). Furthermore, "[a] decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.'" *DeRoo v. United States*, 223 F.3d 919, 923-924 (8th Cir. 2000), citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).

"Therefore, '[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself – the very product of the alleged ineffectiveness." *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000), citing *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). In the present matter, Petitioner's plea should be set aside because the plea agreement was not knowing and voluntary because it was the result of advice outside the range of competence demanded of attorneys in criminal cases.

Furthermore, the statute of limitations of 28 U.S.C. §2255 has not expired because Petitioner filed his Habeas Corpus Petition within one-year from "the date on which the facts supporting the claim could have been discovered with due diligence." 28 U.S.C. §2255 (4). The facts supporting Petitioner's Habeas Corpus Petition all stem from the ineffective assistance of counsel that Petitioner received throughout his plea and sentencing. Petitioner's attorney, Mr. McCloud was incompetent in a number of ways throughout the plea and sentencing. First, Mr. McCloud failed to request discovery before advising Petitioner to plead guilty. Second, Mr. McCloud failed to investigate the case thoroughly which violated Petitioner's Sixth Amendment right to effective assistance of counsel. Third, Mr. McCloud failed to investigate a *Miranda* issue and a search and seizure issue which Petitioner believes would have caused a different outcome in Petitioner's case. (See Petition for Writ of Habeas Corpus, Exhibit B) (See also, Affidavit of Samuel A. McCloud, Exhibit D). After actively seeking an attorney to review his case, the first time that Petitioner learned that he had received ineffective assistance of counsel was in a letter from Gary Bryant-Wolf, an attorney hired to investigate his case. The letter was dated June 29, 2003, however the letter was date stamped and mailed from the sender until July 5, 2003, (See Postage on Envelope, Exhibit E), therefore it is impossible for the Petitioner to

have received that letter prior to July 6, 2003, or thereafter. Thus, his Habeas Corpus Petition is not barred by the statute of limitations because he filed it on July 6, 2004 – a year after he arguably received the letter from Gary Bryant-Wolf. Thus, after diligently seeking professional advice, and upon learning that he received ineffective assistance of counsel, the facts supporting Petitioner's Habeas Corpus claim, Petitioner filed his Habeas Corpus Petition within one year from the date he learned the facts supporting Petitioner's Habeas Corpus Claim.

**B. Equitable Tolling of 28 U.S.C. §2255**

In the alternative, if the Court finds that the statute of limitations has run under 28 U.S.C. §2255, the Court should apply the doctrine of equitable tolling to the present matter because of the extraordinary circumstances that made it impossible for Petitioner to file on time. "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000). The balancing test that applies to all equitable tolling cases requires the court to balance the (1) petitioner's lack of knowledge of the filing requirement; (2) petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap v. U.S.*, 250 F.3d 1001, 1008-1009 (6th Cir. 2001). In *Baldayaque v. U.S.*, 338 F.3d 145 (2nd Cir. 2003), the court held that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year statute of limitations period of AEDPA." *Id.* at 152-153.

In the present matter, Petitioner was unaware that he had received ineffective assistance of counsel until he spoke with a professional about the circumstances surrounding his case.

During his case, Petitioner trusted Mr. McCloud to competently represent him. Petitioner pled guilty based on Mr. McCloud's advice. Petitioner was not in a position to investigate whether Mr. McCloud had requested discovery in his case or if Mr. McCloud had conducted any investigation. Surely, the Court cannot expect a layperson to know when he has received ineffective assistance of counsel, nor can the Court expect that an individual will hire two lawyers, one to handle the case, and one to review the other lawyer's work. After his sentencing, Petitioner diligently sought a professional to investigate his case and after learning that Mr. McCloud's performance was incompetent he timely filed his Petition for Habeas Corpus Relief.

Petitioner diligently sought professional advice to review his case. Petitioner first learned of his ineffective assistance of counsel claim when he received a letter from Gary Bryant-Wolf, an attorney hired to investigate his case. This letter was dated June 29, 2003, however, this letter was not mailed until July 5, 2003. (See Postage on Envelope, Exhibit E). Obviously, Petitioner received Bryant-Wolf's letter after July 5, 2003 and even assuming arguendo that the letter was received by the Petitioner in prison as soon as July 6, 2003, Petitioner's Habeas Petition was timely because it was filed on July 6, 2004, a year after the letter was arguably received.

**C. Ineffective Assistance of Counsel**

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.2052 (1984), the Supreme Court set the standard for ineffective assistance of counsel claims. The standard set forth in *Strickland* is "when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. Furthermore, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court extended the *Strickland* test to

guilty pleas in *Hill v. Lockhart*, 474 U.S. 52 (1985). When counsel represents a defendant during the plea process and gives advice to the defendant regarding a plea agreement, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill*, supra at 56, citing *McMann v. Richardson*, 397 U.S. 759 (1970). In addition, "in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, supra at 59.

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination of whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill*, supra at 58. In the present matter, Petitioner's attorney, Mr. McCloud was incompetent in a number of ways throughout the plea and sentencing.

**1. Failed to Request Discovery**

Mr. McCloud failed to request discovery before advising Petitioner to plead guilty. (See Bryant-Wolf's letter dated June 29, 2003, Exhibit F) (indicating that Wesley Brooks' attorney had him plead guilty so fast that no discovery was ordered released by the federal magistrate judge) (Also see Affidavit of Sam McCloud, Exhibit D). By failing to request discovery, Mr. McCloud failed to discover potentially exculpatory evidence and as a result he inaccurately advised Petitioner to plead guilty. The specific nature of the exculpatory evidence is unknown because as indicated above Brooks pled guilty before a request for discovery was made to the Judge. (See Bryant-Wolf's letter dated June 29, 2003, Exhibit F). Thus, Mr. McCloud's failure

to request discovery was prejudicial to Petitioner's case because any exculpatory evidence that existed was never discovered.

**2. Failed to Investigate the Case**

Mr. McCloud failed to investigate the case thoroughly which violated Petitioner's Sixth Amendment right to effective assistance of counsel. (See Affidavit of Samuel McCloud, Exhibit D). If Mr. McCloud had investigated Petitioner's case he would have discovered that Brooks was not read his *Miranda* rights before he was interrogated. In addition, the 'inventory' search of Petitioner's vehicle, which produced the evidence for the federal prosecution against him was questionable. Mr. McCloud should have pursued both the *Miranda* issue and the search and seizure issue. Although the challenges may not have been successful, effective assistance of counsel requires that the challenge be made. (See *Rinehart v. Brewer*, 561 F.2d 126 (8th Cir. 1977)) (finding that counsel should have pursued the possibility of suppressing an incriminating statement made by the client, that the attorney rendered incompetent representation and that the client was materially prejudiced by counsel's failure to adequately investigate the suppression issue.) Mr. McCloud should have pursued the possibility of suppressing the statements made by Brooks in the custodial interrogation and the evidence recovered in the 'inventory' search of Petitioner's vehicle, because he did not, Mr. McCloud rendered incompetent representation and Petitioner has been materially prejudiced by counsel's failure to adequately investigate his case.

**a. Interrogation without *Miranda* Warnings**

Petitioner apologizes to the Court that this issue was not raised in his Habeas Corpus Petition, nor in his Objection's to the Court's Report and Recommendation. However, Petitioner respectfully requests the Court to consider this argument now.

In *Miranda v. Arizona*, 384 U.S. 436, 467-70 (1966), the Supreme Court held that, prior to initiating a custodial interrogation, the police must protect a suspect's Fifth Amendment privilege against self-incrimination by warning him that the State intends to use any statements to secure a conviction and that he has the right to remain silent and to have counsel present if he so desires. Once advised of those rights, the suspect may waive them, "provided the waiver is made voluntarily, knowingly and intelligently." *Beck v. Bowersox*, 362 F.3d 1095 (8th Cir. 2004), citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); See *Moran v. Burbine*, 475 U.S. 412, 422-23 (1986). "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *United States v. Lebrun*, 363 F.3d 715 (2004), citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Lebrun*, 363 F.3d 715 (2004), quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Thus, the critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's "freedom to depart was restricted in any way." *United States v. Lebrun*, 363 F.3d 715 (2004), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

In the present matter, Petitioner was in custody (Officer jumped on Petitioner's back) and had not been given his *Miranda* rights at the time the police officer asked Petitioner "if the Buick was his car," to which Petitioner responded "yes." (See Minnesota Department of Public Safety State Patrol East Metro District Troopers Report, pg. 3; Exhibit G). The Officer asked Petitioner this question, even though the police already knew that the registered owner of the vehicle was Rochelle Maria Johnson. (See Steele County Sheriff's Department, Report of Investigation; Exhibit H). In addition when the Officer saw U.S. Currency, hypodermic needles, and

white/yellow powder substance in the vehicle he asked Petitioner if he was a diabetic or an addict," to which Petitioner responded "that he was not diabetic." Implying that Petitioner was an addict. Obviously, Petitioner's freedom to depart was restricted because Petitioner was not free to leave once the Officer had jumped on him. Such custodial interrogation before Petitioner had been given his *Miranda* rights violated Petitioner's Fifth Amendment right to self-incrimination. Petitioner made two incriminating statements, first he stated that the vehicle was his and second he admitted that he was an "addict." Petitioner was not given is *Miranda* rights prior to responding to these questions and as such these statements would have been inadmissible at trial. Whether the State could have proved that Petitioner was the owner of the vehicle or the owner of the contents of the vehicle, without these statements, is unknown. However, Mr. McCloud's failure to raise this argument prejudiced Petitioner because Petitioner pled guilty as opposed to going to trial. If Mr. McCloud had properly investigated Petitioner's case and discovered this violation of Petitioner's Fifth Amendment right to self-incrimination, he would have changed his recommendation as to Petitioner's plea.

**b. Search of Petitioner's Vehicle was Improper**

Mr. McCloud failed to investigate the valid search and seizure issue which prejudiced the Petitioner's case. More specifically, the search and seizure issue involves an 'inventory' search completed without a search warrant after Petitioner was arrested and in police custody. The search of Petitioner's vehicle was not a proper inventory search, nor was it a search conducted incident to a lawful arrest.

**1. Search of Petitioner's Vehicle was not an Inventory Search**

Law enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment. *U.S. v. Rowland*, 341 F.3d

774 (8th Cir. 2003), citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). The only limit on such searches is they must be reasonable under the circumstances. Inventory searches are reasonable if "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion. *Rowland*, 341 F.3d at 779, citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). In *U.S. v. Rowland*, 341 F.3d 774 (8th Cir. 2003), the court found the search of defendant's impounded vehicle was not a valid inventory search under the Fourth Amendment because the police officers made a record of only potentially incriminating evidence found in the vehicle and failed to record all property found within the vehicle. *Id.* at 782. The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity. *Id.* at 780, quoting *United States v. Marshall*, 986 F.2d 1171, 1175-76 (8th Cir. 1993). However, in *Rowland*, the court was concerned with the police motive to find incriminating evidence combined with what the police chose to record or not to record. *Rowland*, 341 F.3d at 780.

In the present matter, Petitioner does not have the State Patrol East Metro District impoundment policy because as indicated earlier no discovery was made in Petitioner's case, therefore Petitioner does not know if the inventory search was conducted pursuant to standardized police procedures. However, despite the lack of discovery, it appears that this 'inventory' search was investigatory in nature rather than an attempt to ensure the safe return of Petitioner's property. At 6:45 a.m. the morning after Petitioner was arrested, an Officer conducted a search of Petitioner's vehicle. (See Minnesota Department of Public Safety State Patrol East Metro District Troopers Report, pg. 3; Exhibit G). There was no formal inventory record created at the time that this first search took place. Instead, the only record of what the

officer discovered is in the Minnesota Department of Public Safety State Patrol East Metro District Troopers Report (pg. 3; Exhibit G). The only evidence recorded in this report is incriminating evidence and not all property that was in the vehicle. Even the personal effects that were found indicated to the Officer that Petitioner was on a trip to procure narcotics. (See Minnesota Department of Public Safety State Patrol East Metro District Troopers Report, pg. 4; Exhibit G). Moreover, this search created the probable cause necessary for Matt Sokol to obtain a search warrant to conduct an additional search of the Petitioner's vehicle. (See Application for Search Warrant and Supporting Affidavit; Exhibit I) and (See Search Warrant; Exhibit J). In that search, Officer Sokol made a formal inventory list and recorded personal effects, such as a spoon, a telephone book and a map of Metro Birmingham Alabama. (See Receipt, Inventory and Return; Exhibit K). This second search of the vehicle indicates that the first search was conducted primarily for investigative purposes rather than an attempt to ensure the safety of Petitioner's property. Therefore, any evidence obtained as a result of the first search should have been suppressed because the first search was not conducted pursuant to a valid inventory search. The State's case was based on the evidence recovered in the first search, namely the weapons found in the trunk of the vehicle and if the evidence had been properly suppressed, the State would not have had any evidence upon which to proceed against the Petitioner. Petitioner received ineffective assistance of counsel and was prejudiced by Mr. McCloud's failure to investigate the nature of the first search conducted on Petitioner's vehicle. Petitioner would have gone to trial as opposed to pleading guilty if he had known the first search was conducted illegally. If Mr. McCloud had properly investigated Petitioner's case and discovered this violation of Petitioner's Fourth Amendment right against warrantless searches and seizures, he would have changed his recommendation as to Petitioner's plea.

**2. The Search was not Incident to a Lawful Arrest**

The search of Petitioners vehicle was not conducted pursuant to a valid inventory search, nor was the search of Petitioner's vehicle conducted incident to a lawful arrest. In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881 (1964), the Court held invalid a search of the defendant's car while he was in custody. In *Preston*, the defendant was arrested and his automobile was driven to a police station and towed to a garage where it was searched after the defendant was booked. The state argued that the search was incident to a lawful arrest but the Supreme Court held that it was not. "[T]he rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime – things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. *Id.* at 367.

In the present matter, Petitioner was booked at the Dakota County Jail and was being held on four felony warrants when the search of the vehicle was taken at 6:45 a.m. on the morning after Petitioner was arrested. (See Minnesota Department of Public Safety State Patrol East Metro District Troopers Report, Exhibit G). Clearly this search was not conducted incident to an arrest. The arrest of Petitioner occurred before the search of the vehicle occurred and Petitioner was in jail by the time the search was conducted. In this instance there was no need to search the vehicle without a warrant because no one was present that would assault the Officer or destroy evidence of the crime, especially if the vehicle had been towed to a secured area at the East Metro State Patrol Headquarters in Oakdale, MN. (See Minnesota Department of Public Safety

State Patrol East Metro District Troopers Report, Exhibit G). The search of Petitioner's vehicle was remote in time and place from the arrest. Thus, the search of Petitioner's vehicle did not occur incident to an arrest because there was no contemporaneous need for protection or to prevent the destruction of evidence of the crime. Because the search was not conducted pursuant to a lawful arrest all, of the evidence seized in the vehicle would have been fruit of the poisonous tree and inadmissible at trial. This inadmissible evidence was the basis for the United States Government's case against the Petitioner. If the evidence had been properly challenged and excluded, there would have been no evidence upon which to prosecute the Petitioner, thus Petitioner has been prejudiced by Mr. McCloud's failure to fully investigate this search and seizure issue.

Obviously, Mr. McCloud's representation fell below an objective standard of reasonableness. Mr. McCloud failed to request discovery in Petitioner's case and he failed to fully investigate several issues in Petitioner's case. In addition, there is a reasonable probability that if Mr. McCloud had looked into the issues surrounding Petitioner's Fifth Amendment rights and Fourth Amendment rights the result of the proceeding would have been different-the U.S. Government would have lacked evidence to base its prosecution upon. The U.S. Government would not have been able to support its burden of proof if the above evidence had been suppressed because it was obtained unconstitutionally. Petitioner would not have pled guilty if he had known that his attorney had not sought discovery nor investigated any of the matters. Petitioner has been prejudiced by the ineffective assistance of counsel he received.

Wherefore, Petitioner respectfully requests that this Court reconsider its Order affirming the Dismissal of Petitioner's Habeas Corpus Petition.

Respectfully Submitted,

Date: November 9, 2004

s/ F. Clayton Tyler

F. Clayton Tyler
230 TriTech Office Center
331 Second Avenue South
Minneapolis, Minnesota 55401